**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS DIVISION**

**ANTONIO OWENS,**

       **Petitioner,**

                                 **Civil Action No. 2:11-cv-29**
**v.**                                 **(Judge Bailey)**

**WARDEN TERRY O'BRIEN,**

       **Respondent.**

## REPORT AND RECOMMENDATION

## I.   INTRODUCTION

On April 13, 2011, Petitioner Antonio Owens ("Petitioner"), proceeding *pro se*, filed a "Motion 28 U.S.C. & 2241 Of Antonio Owens" ("Petition"). (ECF No. 1 ("Pet.").) That same day, the Clerk of the Court sent Petitioner a Notice of Deficient Pleading, instructing him to file an application to proceed *in forma pauperis* or a fee of $5.00, a Prisoner Trust Account Report with the required ledger sheets, and the court-approved form per Local Rule of Prisoner Litigation 3.4 (ECF No. 3.) Petitioner paid the $5.00 filing fee on April 18, 2011. On May 10, 2011, Petitioner filed the court-approved Application for Habeas Corpus Pursuant to 28 U.S.C. § 2241. (Pet., Ex. 4.)

On May 26, 2011, the undersigned entered an Order to Show Cause, directing Respondent, Warden Terry O'Brien ("Respondent"), to respond to Petitioner's Petition within twenty-eight days. (ECF No. 9.) The undersigned entered an Order granting Respondent an extension of time in which to respond on June 23, 2011. (ECF No. 13.) Respondent filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment ("Motion") on July 14, 2011. (ECF No. 15.) On July 15, 2011, the undersigned issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of his right to file a response and that a failure to respond could result in

the entry of a dismissal order against him. (ECF No. 17.) On August 9, 2011, the undersigned entered an Order granting Petitioner an extension of time in which to file his response to Respondent's Motion. (ECF No. 20.) Petitioner's response ("Response") was filed on September 22, 2011.[1] (ECF No. 24 ("Resp.").) This case is now before the undersigned for a Report and Recommendation on Petitioner's Petitioner, Respondent's Motion, and Petitioner's Response. For the reasons set forth below, the undersigned recommends that Respondent's Motion be granted and that Petitioner's Petition be denied and dismissed with prejudice from the Court's docket.

## II.    FACTUAL BACKGROUND

Petitioner is currently incarcerated at the Federal Correctional Institution located in Greenville, Illinois ("FCI Greenville") (Docket Sheet, Case No. 2:11-cv-29); however, at the time he filed his Petition, he was incarcerated at the United States Penitentiary, Hazleton ("USP Hazleton"), located in Bruceton Mills, West Virginia. (*See* Pet.; *see also* Pet., Ex. 4.) On June 18, 2002, Petitioner was released from incarceration after completing a 92-month sentence for bank robbery that was imposed by the United States District Court for the Northern District of Illinois. (Mem. in Supp. of Resp.'s Mot. to Dismiss or, in the alternative, Mot. for Summ. J. ("Mem. in Supp."), Ex. 1 ("Farr Decl.") ¶ 3; *see also* Farr Decl., Att. A.) Petitioner then began a three-year term of supervised release. (Farr Decl. ¶ 3; Farr Decl., Att. A.)

---

[1] The Court notes that Petitioner's Response was filed in the CM/ECF system on September 29, 2011, five days after the deadline given by the Court's August 9, 2011 Order. The Supreme Court has held that under the "mailbox rule," a prisoner's motion should be considered filed at the time the prisoner delivers it "to the prison authorities for forwarding to the court clerk." *Houston v. Lack*, 487 U.S. 266, 276 (1988). Attached to Petitioner's Response is a Certificate of Service in which he declares that he deposited his Response "in the United States Mail at the Federal Correctional Institution at Greenville, Illinois" on September 22, 2011. (*See* Resp.) Therefore, the Court will consider Petitioner's Response as timely under the rule announced in *Houston*.

On September 3, 2002, Petitioner was charged with bank robbery in a Superseding Indictment issued by a Grand Jury sitting in the Northern District of Illinois. (Superseding Indictment, *United States v. Owens*, 1:02-cr-1138-4, ECF No. 58 (N.D. Ill.).)[2] A day later, Petitioner was arrested by the Federal Bureau of Investigation and charged with bank robbery. (Farr Decl. ¶ 5; Farr Decl., Att. C.) On May 13, 2004, the Honorable Ronald A. Guzman, United States District Judge for the Northern District of Illinois, sentenced Petitioner to 145 months of imprisonment and a three-year term of supervised release. (Farr Decl., Att. D.) Petitioner was remanded to the custody of the United States Marshal following sentencing. (*Id.*)

Petitioner was also arrested on June 8, 2003 by the Bolingbrook Police Department. (Farr Decl. ¶ 4, *see also* Farr Decl., Att. B.) He was charged with aggravated battery with a weapon and aggravated battery with great bodily harm. (Farr Decl. ¶ 4.) However, Petitioner was released that same day. (*Id.*)

On April 21, 2005, Petitioner appeared before the Honorable James B. Moran, United States District Judge for the Northern District of Illinois, and was sentenced to 30 months incarceration for violating his supervised release in Case No. 1:95-cr-411-1. (Farr Decl., Att. E.) Judge Moran ordered that 18 months be served concurrently with the 145-month sentence Petitioner received on May 13, 2004 and that 12 months run consecutively. (*Id.*)

On September 21, 2005, the United States Court of Appeals for the Seventh Circuit ("Seventh Circuit"), by published opinion, vacated Petitioner's 145-month sentence in Case No. 1:02-cr-1138-2 and remanded his case for a new trial. (Farr Decl. ¶ 8, *see also* Farr Decl., Att. F); *see also United States v. Owens*, 424 F.3d 649 (7th Cir. 2005). On November 3, 2006, after a retrial,

---

[2] The Superseding Indictment is available online at http://www.pacer.gov/.

Judge Guzman resentenced Petitioner to 162 months incarceration for bank robbery in Case No. 1:02-cr-1138-2. (Farr Decl., Att. G.) Judge Guzman's judgment was silent as to how the 162-month sentence would operate with regards to the already-imposed 30 months incarceration for Petitioner's violation of his supervised release. Therefore, the 162 months were considered to run consecutively to the 30 months. *See* 18 U.S.C. § 3584(a); (Farr Decl. ¶ 9; Farr Decl., Att. H.)

After Petitioner's resentencing, the Bureau of Prisons ("BOP") calculated his 30-month sentence, commencing the term of imprisonment on April 21, 2005, the date the sentence was imposed. (Farr Decl. ¶ 10; *see also* Farr Decl., Att. I.) The BOP awarded prior custody credit for June 8, 2003 and from September 4, 2003 until April 20, 2005. (Farr Decl., Att. I.) The BOP's calculations rendered a release date of December 12, 2005. (*Id.*)

On November 5, 2008, the Seventh Circuit affirmed Petitioner's conviction but vacated his 162-month sentence. *United States v. Owens*, 298 F. App'x 505, 510, 2008 WL 4808849, at *5 (7th Cir. Nov. 5, 2008). On remand, on September 23, 2009, Judge Guzman resentenced Petitioner to 145 months incarceration. (Farr Decl., Att. J.) Thereafter, the BOP calculated Petitioner's 145 months to commence on November 3, 2006 and gave him prior custody credit from December 13, 2005 through November 2, 2006. (Farr Decl., Att. K.) The BOP's calculations rendered a projected release date of June 22, 2016. (*Id.*)

### III.   CONTENTIONS OF THE PARTIES

#### A.    *The Petition*

In his Petition, Petitioner asserts the following three grounds:

1.      Owens is serving an illegal sentence in violation of the 5th and 14th Amendment of the United States Constitution, not receiving jail time credit, for time already served in prison. Having had received a much harsher sentence by the Federal Bureau of Prison, staff at Designation Sentence

Computation Center.

2.    Owens ask that a remedy for his sentence be recission.  A miscarriage of justice, if he was not discharge from his illegal imprison sentence.  Being that his sentence violate the Double Jeopardy clause of the 5th Amendment and the 14th Amendment of U.S. Constitution.

3.    Owens, who is imprisoned under, and by virtue of violation of the United States Constitution law.  Representation is made by petitioner, that he is a prisoner, confined in the United States Penitentiary Hazelton, West Virginia in the custody of Warden, Terry O'Brien.

(Pet. at 2.)

However, in his court-approved form, Petitioner states his three grounds as such:

1.    On September 21, 2005 Owens sentence for case # 02-CR-1138-4 was vacated by the 7th Cir U.S. Court of Appeals and the case remanded.  On November 3, 2006, the District Court violated Owens' 14th Amendment of the United States Constitution, by imposing more time, than at Owens' initial trial by Judge R.A. Guzman.

2.    On March 2006, Owens was tried before a jury and convicted.  Owens was sentenced in violation of the 6th Amendment, because trial Judge R.A. Guzman explicitly enhanced Owens sentence based on facts neither considered by the jury nor admitted by Owens.

3.    On November 2009 Owens was sentenced in violation of the 5th, 6th, and 14th Amendment of the United States Constitution, by Judge R.A. Guzman explicitly enhanced Owens sentence based on facts neither considered by the jury nor admitted by Owens.

(Pet., Ex. 4 at 4-5.)

**B.    The Respondent's Motion**

In his Motion, Respondent asserts that the petition should be dismissed for the following

reasons:

1.    Petitioner is precluded from seeking relief regarding his sentence computation because he failed to exhaust his administrative remedies.

2.    Petitioner is not entitled to receive credit from September 3, 2003, until

December 13, 2004 toward his second 145-month federal sentence in Case No. 02-CR-1138-4.

3.    Petitioner's constitutional claims regarding the validity of his sentencing by the District Court for the Northern District of Illinois do not merit relief under Section 2241.

(Mem. in Supp. at 7-12.)

## C.    The Petitioner's Response

In his Response, Petitioner argues that he should be granted relief because only the Court is capable of addressing his issue and because Respondent "never followed any of the BOP administrative remedy program statements." (Resp. at 4.)  Furthermore, Petitioner alleges that the BOP never contacted the appropriate United States Attorney regarding his sentence for violating his supervised release as he alleges the BOP's sentence computation manual directs. (*Id.* at 8.)  Finally, Petitioner suggests that his due process and equal protection rights were violated by the imposition of a harsher sentence after the Seventh Circuit remanded his case for a new trial. (*Id.* at 9.)  He asks to be released from prison, to be compensated with $60,000, or to have his sentence corrected to have 18 months run concurrently with the 145 months. (*Id.* at 10.)

## IV.    STANDARD OF REVIEW

### A.    Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs, Inc. v. Matkari*, 7 F.3d

1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46. In *Twombly*, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* (citations omitted), to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in *Ashcroft v. Iqbal*, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a

claim. *Id.*

## B.    *Motion for Summary Judgment*

A grant of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Motions for summary judgment impose a difficult standard on the moving party because it must be obvious that no rational trier of fact could find for the nonmoving party. *Miller v. Fed. Deposit Ins. Corp.*, 906 F.2d 972, 974 (4th Cir. 1990). In applying the standard for summary judgment, a court must review all the evidence "in the light most favorable to the nonmoving party." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In *Celotex*, the Supreme Court held that the moving party bears the initial burden of informing the court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. *Celotex*, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. *Id.* This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. *Id.* at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-

minded jury could return a verdict for the [party]." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. *Anderson*, 477 U.S. at 248. Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita*, 475 U.S. at 587 (citation omitted).

## V. ANALYSIS

### A. *Jurisdiction Over Petitioner's Petition*

Petitioner was incarcerated at USP Hazleton at the time he filed his Petition. (*See* Pet., Ex. 4.) However, Petitioner has subsequently been transferred to FCI Greenville in Greenville, Illinois. (*See* Docket Sheet, Case No. 2:11-cv-29.) However, "[j]urisdiction is determined at the time an action is filed; subsequent transfers of prisoners outside the jurisdiction in which they filed actions do not defeat personal jurisdiction." *United States v. Edwards*, No. 93-7172, 27 F.3d 564, 1994 WL 285462, at *1 (4th Cir. June 29, 1994); *see also Warren v. United States*, C/A No. 3:10-1245-MBS-JRM, 2011 WL 4435655, at *2-5 (D.S.C. Sept. 23, 2011). Therefore, although Petitioner has been transferred to another federal facility outside the Northern District of West Virginia, this Court retains jurisdiction over Petitioner's Petition.

### B. *Ground One: Credit for Time Served in Prior Custody*

#### 1. Petitioner Has Not Exhausted His Administrative Remedies

In this case, Respondent asserts that Petitioner has failed to exhaust his administrative remedies regarding his sentence computation. (Mem. in Supp. at 7.) Specifically, Respondent contends that Petitioner filed only one administrative remedy regarding his sentence computation

at the institutional level, and that Petitioner received a response to this remedy. (*Id.* at 9.) Respondent also contends that Petitioner did not exhaust his administrative remedies because he did not make any further submissions. (*Id.* at 10.)

Respondent further argues that under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); (Mem. in Supp. at 7.) He then cites several cases in which the Supreme Court and the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") have held that under the PLRA, Congress has mandated the proper completion of any prison administrative remedy process capable of addressing an inmate's complaint and providing some form of relief prior to filing suit in federal court. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 531 U.S. 956 (2001); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674 (4th Cir. 2005); (Mem. in Supp. at 7-8.) In addition, Respondent notes that the Fourth Circuit has applied these same principles to petitions for a writ of habeas corpus. *See Asare v. U.S. Parole Comm.*, 2 F.3d 540, 544 (4th Cir. 1993); *Miller v. Clark*, 958 F.2d 368, 1992 WL 48031 (4th Cir. Mar. 16, 1992); (Mem. in Supp. at 8.) Accordingly, Respondent argues that Petitioner's Petition should be dismissed for his failure to exhaust administrative remedies.

While the undersigned does not dispute that the PLRA mandates the exhaustion of administrative remedies, or that similar principles have been applied in habeas corpus actions, Respondent's argument misses the mark. The requirements of the PLRA are applicable to civil suits in which a prisoner challenges the conditions of his confinement, not habeas proceedings challenging the execution of a sentence under 28 U.S.C. § 2241. *See LaRue v. Adams*, No. 1:04-

0396, 2006 WL 1674487, at *6-7 (S.D. W. Va. June 12, 2006). Moreover, to the extent that

exhaustion has been applied to habeas corpus, such a requirement is not mandated by statute.

Instead, exhaustion prerequisites in habeas corpus actions arising under § 2241 are merely judicially

imposed. *See, e.g., Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996) (federal

inmates are required to exhaust their administrative remedies prior to filing a a § 2241 petition);

*Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1996) (same); *McCallister v. Haynes*, Nos.

Civ.A.1:03-CV214, Civ.A.1:03-CV-137, 2004 WL 3189469, at *1-2 (N.D. W. Va. July 13, 2004)

(same). Because the exhaustion requirement is only judicially imposed in habeas proceedings, it

follows that a court has the discretion to waive that requirement in certain circumstances. *See*

*LaRue*, 2006 WL 1674487, at *8. Indeed, a number of courts have found that the exhaustion

requirement may be waived where the administrative process would be futile. *See id.* at *5-*7.

However, even in cases where the administrative process is unlikely to grant an inmate relief,

courts have enforced a longstanding policy favoring exhaustion. *See Alexander v. Hawk*, 159 F.3d

1321, 1327-28 (11th Cir. 1998). In particular, it has been noted that the following policies are

promoted by requiring the exhaustion of administrative remedies:

> (1) to avoid premature interruption of the administrative process; (2) to let the
> agency develop the necessary factual background upon which decisions should be
> based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to
> improve the efficiency of the administrative process; (5) to conserve scarce judicial
> resources . . .; (6) to give the agency a chance to discover and correct its own errors;
> and (7) to avoid the possibility that 'frequent and deliberate flouting of the
> administrative processes could weaken the effectiveness of an agency by
> encouraging people to ignore its procedures.'

*Id.* at 1327 (citation omitted).

According to 18 U.S.C. § 3585(b),

A defendant shall be given credit toward the service of a term of imprisonment for

any time he has spent in official detention prior to the date the sentence commences–

(1) as a result of the offense for which the sentence was imposed; or

(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed.

However, the Attorney General, through the BOP, determines the amount of credit to be awarded for time spent in official detention. *United States v. Wilson*, 503 U.S. 329, 335 (1992). A prisoner may seek administrative review of credit decisions; once they exhaust their administrative remedies, judicial review is available. *Id.* (citations omitted); 28 C.F.R. §§ 542.10 to 542.16.

Exhaustion of administrative remedies requires completion of four steps. The prisoner must first attempt to resolve the issue informally. 28 C.F.R. § 542.13. If the issue is not resolved, the prisoner may then file a formal written administrative remedy request, followed by an appeal to the Regional Director, and followed by an appeal to the General Counsel. 28 C.F.R. §§ 542.14-542.15. A final decision from the General Counsel completes the administrative remedy process. 28 C.F.R. § 542.15(a). Here, Petitioner filed one formal written administrative remedy request regarding his sentence computation. (Mem. in Supp., Ex. 2 ("Littlejohn Decl.") at ¶¶ 5-6; *see also* Littlejohn Decl. Att. A-B; Pet., Ex. 1.) He received an informational response on August 5, 2010. (Littlejohn Decl. ¶ 6; Littlejohn Decl. Att. A-B.) However, Petitioner did not make any further submissions with respect to his sentence computation. (Littlejohn Decl. ¶ 7.) Therefore, his failure to exhaust his administrative remedies stemmed from a procedural default. *See Moscato*, 98 F.3d at 760 (A prisoner's "failure to satisfy the procedural rules of the Bureau's administrative's process constitutes a procedural default.").

"[A] prisoner's procedural default of his administrative remedies bars judicial review of his habeas petition unless he can show cause for the default and prejudice attributable thereto." *Id.* In

his Reply, Petitioner suggests that he did not complete the administrative remedy process because Respondent "never followed any of the BOP administrative remedy program statements." (Reply at 4.) Specifically, Petitioner suggests that "the BOP never called the United States Attorney as sentence computation manual states." (*Id.* at 8.) According to Petitioner, the BOP is required to contact the appropriate United States Attorney for guidance if a court imposes a probation revocation sentence that, when added to the original term of imprisonment, exceeds the maximum for the offense. (*Id.*)

Petitioner has not provided any evidence to support his allegation that Respondent did not contact the appropriate United States Attorney for guidance regarding the calculation of Petitioner's sentence. Furthermore, it is unclear as to what section of BOP Program Statement 5880.28, *Sentence Computation Manual* (CCCA of 1984) ("*Manual*") Petitioner is referring to. The section of the *Manual* governing credit for time spent in prior custody only states that the appropriate United States Attorney should be contacted if the court's Judgment and Commitment Order "**orders** that a period of time be awarded that is not authorized." BOP Program Statement 5880.28, *Sentence Computation Manual* (CCCA of 1984) 1-27, *available at* http://www.bop.gov/policy/progstat/5880_028.pdf. Nothing in the various Judgment and Commitment Orders regarding Petitioner suggest that this occurred. Furthermore, nothing in the section of the *Manual* governing the revocation of supervised release states that the BOP must contact the appropriate United States Attorney. *See id.* at 1-65 to 1-70. Even if the BOP had a responsibility to contact the appropriate United States Attorney, Petitioner's revocation sentence of 30 months, when added to his original term of imprisonment for 92 months, does not exceed the maximum punishment for the offense of bank robbery. The maximum term of imprisonment for

bank robbery is twenty years. 18 U.S.C. § 2113(a). Petitioner's combined sentence of 122 months equals a term of imprisonment just over ten years, well below the statutory maximum penalty of twenty years.

In sum, Petitioner offers only one rationalization for his procedural default. Thus, the undersigned finds that Petitioner's failure to exhaust his administrative remedies has resulted from his own neglect, not from genuine cause. Since cause was not shown, the Court need not reach the issue of prejudice. Accordingly, Petitioner's § 2241 Petition should be dismissed with prejudice for his failure to exhaust his administrative remedies and for failing to show good cause for his procedural default. However, even if Petitioner had exhausted his administrative remedies, it is clear that his Petition would still be subject to dismissal for the reason discussed below.

### 2. Petitioner Is Not Entitled to Receive Prior Custody Credit From September 3, 2003 Until December 13, 2005

In his Petition, Petitioner alleges that he has not received prior custody credit from September 3, 2003 through December 13, 2005. (Pet. at 4.) Respondent argues that Petitioner is not entitled to prior custody credit toward his 145-month sentence for bank robbery because he had already completed his 30-month sentence for violating his supervised release when his 145-month sentence commenced. (Mem. in Supp. at 10-12.) The undersigned agrees with Respondent and finds that the BOP correctly calculated the length of Petitioner's sentence. When determining an issue involving the computation of a sentence, a court "must consider: (1) when the sentence commenced; and (2) the extent to which the petitioner may be entitled to credit for time spent in custody prior to commencement of the sentence." *Ashley v. Berkebile*, No. 5:10-0691, 2010 WL 2720778, at *2 (S.D. W. Va. June 14, 2010).

### a. Commencement of Petitioner's Sentences

"A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). The Fourth Circuit has noted that "[a] federal sentence cannot commence prior to the date it is pronounced." *United States v. McLean*, 867 F.2d 609, 1989 WL 5457, at *1 (4th Cir. Jan. 13, 1989). This is true even if a federal sentence is "made concurrent with a sentence already being served." *United States v. Flores*, 616 F.2d 840, 841 (5th Cir. 1980) (citing *Wilson v. Henderson*, 468 F.2d 582, 584 (5th Cir. 1972)).

Here, the BOP calculated Petitioner's 145-month sentence received in Case No. 1:02-cr-1138-4 to commence on May 13, 2004, the date the sentence was imposed. (Farr Decl. ¶ 14.) When the District Court in Case No. 1:95-cr-411-1 ordered that Petitioner's 30-month sentence for violating his supervised release run partially concurrently and partially consecutively to the 145-month sentence, the BOP calculated the future commencement date of his 30-month sentence to be December 15, 2012. (*Id.*) However, on September 21, 2005, the Seventh Circuit vacated Petitioner's 145-month sentence and remanded his case for a new trial. (*Id.*; *see also* Farr Decl., Att. F.) Therefore, because there was no sentence for Petitioner's 30-month sentence to run partially concurrent to, the BOP calculated the commencement of his 30-month sentence from the date it was imposed–April 21, 2005. (Farr Decl. ¶ 14.)

On November 3, 2006, Judge Guzman resentenced Petitioner to 162 months in Case No. 1:02-cr-1138-4. (Farr Decl., Att. G.) However, Judge Guzman's judgment was silent as to how this sentence would operate with regards to Petitioner's 30-month sentence for his supervised release

violation.  (*See id.*)  Because of this, the BOP considered the 162-month sentence to run consecutively to the 30-month sentence because "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently."  18 U.S.C. § 3584(a).  On September 23, 2009, Judge Guzman amended Petitioner's sentence in Case No. 1:02-cr-1138-4 to 145 months.  (Farr Decl., Att. J.)  The BOP then calculated this sentence to commence on November 3, 2006, the date Petitioner's sentence in Case No. 1:02-cr-1138-4 was originally imposed.  (Farr Decl. ¶ 12.)

In sum, although Judge Moran ordered that Petitioner's 30-month sentence in Case No. 1:95-cr-411-1 have 18 months run concurrently and 12 months run consecutively with the 145-month sentence imposed by Judge Guzman in Case No. 1:02-cr-1138-4 on May 13, 2004, circumstances changed once the Seventh Circuit vacated Petitioner's 145-month sentence.  Therefore, the undersigned finds that Petitioner's 30-month sentence in Case No. 1:95-cr-411-1 could not commence prior to the date it was imposed on April 21, 2005.  The undersigned also finds that Petitioner's amended sentence of 145 months in Case No. 1:02-cr-1138-4 could not commence prior to November 3, 2006.

### b.    Calculation of Prior Custody Credit

As stated above, the Attorney General, through the BOP, determines the amount of credit to be awarded for time spent in official detention prior to the commencement of a prisoner's sentence.  *Wilson*, 503 U.S. at 335.  18 U.S.C. § 3585(b) provides as follows:

A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences–

(1) as a result of the offense for which the sentence was imposed; or

(2) as a result of any other charge for which the defendant was arrested after the

commission of the offense for which the sentence was imposed.

"Congress made clear that a defendant could not receive a double credit for his detention time." *Wilson*, 503 U.S. at 337. Therefore, under § 3585(b), a prisoner cannot receive prior custody credit if that credit has already been applied to another sentence. *See United States v. Goulden*, 54 F.3d 774, 1995 WL 298086, at *1 (4th Cir. May 17, 1995) (credit is only available for time spent in custody which has not been credited against another sentence); *United States v. Brown*, 977 F.2d 574, 1992 WL 237275, at *1 (4th Cir. Sept. 25, 1992) (a prisoner may receive credit against his federal sentence for time spent in official detention prior to the date his sentence commences unless it has been credited against another sentence).

When the BOP calculated Petitioner's 30-month sentence for violating his supervised release in Case No. 1:95-cr-411-1, prior custody credit was given for June 8, 2003 (the date of Petitioner's arrest by the Bolingbrook Police Department) and from September 4, 2003 up through the day prior to April 21, 2005, when he was sentenced for the supervised release violation. (Farr Decl. ¶ 10; *see also* Farr Decl., Att. I.) These calculations rendered Petitioner's release date to be December 12, 2005. (*Id.*; *see also* Farr Decl., Att. I.) Because Petitioner properly received prior custody credit for this period of time toward his 30-month sentence, it cannot be applied to his current 145-month sentence because the same period had already been credited toward his 30-month sentence. *See* 18 U.S.C. § 3585(b); *see also Wilson*, 503 U.S. at 337; *Goulden*, 1995 WL 298086, at *1; *Brown*, 1992 WL 237275, at *1. Furthermore, Petitioner is not entitled to prior custody credit toward his 145-month sentence for this time because he had already completed his 30-month sentence. (*See* Farr Decl. ¶ 15.) After the completion of the 30-month sentence, he was only entitled to prior custody credit towards his 145-month sentence from December 13, 2005 through September 22, 2009, the

day before Petitioner's sentence in Case No. 1:02-cr-1138-4 was amended. (*See* Farr Decl. ¶¶ 11-12, 15.). Therefore, the undersigned finds that Petitioner properly received prior custody credit, that he is not entitled to relief, and that his Petition should be dismissed.

**C.      *Grounds Two and Three: Petitioner's Constitutional Claims Regarding the Validity of His Sentence Do Not Merit Relief Pursuant to 28 U.S.C. § 2241***

Under the statutory framework for post-conviction relief, a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 are separate devises for securing post-conviction relief. A § 2241 petition attacks the manner in which a petitioner's sentence is executed. 28 U.S.C. § 2241. However, "[t]hose convicted in federal court are required to bring collateral attacks challenging the validity of their judgment and sentence pursuant to 28 U.S.C. § 2255." *In re Vial*, 115 F.3d 1192, 1194 (4th Cir. 1997). "In contrast to a § 2255 habeas petition, which is filed with the original sentencing court, a § 2241 can only be filed in the district in which a prisoner is confined." *United States v. Poole*, 531 F.3d 263, 264 (4th Cir. 2008); *see also* 28 U.S.C. § 2255(a).

A federal prisoner generally may not seek collateral relief from a conviction or sentence through a § 2241 petition; however, there is an exception under the under the "savings clause" located in § 2255. This provision allows a prisoner to seek relief under § 2241 if the remedy under § 2255 is "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). The "savings clause" is not triggered "merely . . . because an individual is procedurally barred from filing a § 2255 motion[.]" *In re Vial*, 115 F.3d at 1194 n.2. § 2255 "is not inadequate or ineffective merely because an individual is unable to obtain relief under that provision." *In re Jones*, 226 F.3d 328, 333 (4th Cir. 2000). Furthermore, the Fourth Circuit has held that the "savings clause" applies only in very limited circumstances. Specifically, § 2255 is "inadequate and ineffective" when:

> (1) at the time of conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law.

*In re Jones*, 226 F.3d at 333-34. A petitioner bears the burden of demonstrating that the remedy under § 2255 is inadequate or ineffective. *Hood v. United States*, 13 F. App'x 72, 2001 WL 648636, at *1 (4th Cir. June 12, 2001); *Jeffers v. Chandler*, 234 F.3d 277, 280 (5th Cir. 2000).

§ 2255 also includes a gatekeeping provision limiting a prisoner's ability to file a second or successive § 2255 motion. A second or successive petition "must be certified . . . by a panel of the appropriate court of appeals to contain–"

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h). If a prisoner files a second or successive § 2255 motion, overtly or disguised as a motion under another provision, without certification from the appropriate court of appeals, then the court in which the motion was filed lacks jurisdiction. *United States v. Winestock*, 340 F.3d 200, 205-06 (4th Cir. 2003).

A review of Petitioner's instant Petitioner reveals that in Grounds Two and Three, he asserts that he was sentenced in violation of the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution. (*See* Pet., Ex. 4 at 5; *see also* Pet. at 2, 5-7.) Accordingly, this review reveals that Petitioner is challenging the validity of his sentence in Grounds Two and Three. While Petitioner may have styled these grounds in a § 2241 petition, these grounds constitute a thinly

veiled § 2255 motion. There has been a "longstanding practice of courts to classify *pro se* pleadings from prisoners according to their contents, without regard to their captions." *Winestock*, 340 F.3d at 203 (citing *United States v. Emmanuel*, 288 F.3d 644, 647 (4th Cir. 2002)). Furthermore, Petitioner has not demonstrated that § 2255 is inadequate or ineffective so that he is entitled to resort to § 2241 to petition for post-conviction relief. *See Hood*, 13 F. App'x 72, 2001 WL 648636, at *1. Petitioner cannot seek review of the validity of his sentence in a § 2241 Petition simply because he was not successful in his previous § 2255 motion. *In re Jones*, 226 F.3d at 333; (*see* Mem. in Supp., Ex. 3 ("N.D. Ill. § 2255 Denial").) Therefore, the undersigned finds that Grounds Two and Three of Petitioner's § 2241 Petition should be construed as a motion made pursuant to 28 U.S.C. § 2255, subject to the gateway and procedural requirements of that statute.

This Court lacks jurisdiction to consider Petitioner's recharacterized § 2255 claims because claims challenging the validity of a conviction or sentence must be brought in the court that imposed the sentence; in Petitioner's case, the United States District Court for the Northern District of Illinois. 28 U.S.C. § 2255(a). However, Petitioner's recharacterized claims should be dismissed instead of transferred to the Northern District of Illinois inasmuch as they form a second or successive § 2255 motion. (*See* N.D. Ill. § 2255 Denial.) Second or successive motions may only be filed after obtaining the certification of the appropriate court of appeals; in Petitioner's case, the Seventh Circuit. 28 U.S.C. § 2255(h); *In re Vial*, 115 F.3d at 1194. There is no indication that Petitioner has obtained certification from the Seventh Circuit to file a second or successive § 2255 motion. Therefore, the undersigned recommends that Grounds Two and Three, after being recharacterized as a § 2255 motion, be dismissed. *See Ellis v. Berkebile*, No. 5:10-cv-00191, 2011 WL 2680724, at *4 (S.D. W. Va. July 8, 2011) (recharacterizing the petitioner's § 2241 petition as

a § 2255 motion and dismissing it as an uncertified second or successive motion).

## VI.   RECOMMENDATION

For the reasons stated herein, the undersigned recommends that Respondent's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 15) be **GRANTED**. Furthermore, for the reasons stated herein, the undersigned recommends that Petitioner's Application for Habeas Corpus Pursuant to 28 U.S.C. § 2241 (ECF No. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable John Preston Bailey, Chief United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. The Court further directs the Clerk of the Court to mail a copy of this Report and Recommendation to the *pro se* Petitioner Antonio Owens.

**DATED:** January 4, 2012

DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE